IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LARRY BARR and ELVA BARR,

    Plaintiffs,

v.                                           Civil Action No. 5:14CV57
                                                           (STAMP)
EQT PRODUCTION COMPANY,
a Pennsylvania Corporation,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFFS' MOTION TO REMAND**

I.   Procedural History

The plaintiffs, Larry Barr and Elva Barr ("the Barrs"), filed this action in the Circuit Court of Wetzel County, West Virginia on April 7, 2014. The Barrs allege that the defendant, EQT Production Company ("EQT"), has been conducting activities on their property that constitute trespass and a nuisance. EQT well pads are on the property in question. The complaint consists of six counts: breach of contract, unjust enrichment, conversion, nuisance, negligence, and punitive damages. The plaintiffs are seeking damages, both general and punitive; abatement of the activities on the plaintiffs' property by the defendant; and a declaration by this Court that all the monies improperly obtained by EQT through its failure to pay royalties to the plaintiffs should be placed in a constructive trust.

The defendant then filed a notice of removal with this Court. The Barrs have now filed a motion to remand. After the motion was

briefed, this Court requested a surreply be filed by EQT. EQT then filed a surreply. Accordingly, the motion is now fully briefed and ripe for consideration.

## II. Facts

In its notice of removal, the defendant provided the affidavit of Bryant Wayne Bowman, II ("Bowman"), an EQT regional land manager, to support its amount in controversy assertion. Bowman stated in the affidavit that the amount in controversy exceeded $75,000.00 because of the plaintiffs' abatement request. Bowman reasoned that ceasing activity at the well pad would cost more than $75,000.00 in lost mineral rights and acreage value, along with the costs of obtaining a new well pad.

In their motion to remand, the Barrs argue that EQT is unable to establish that the amount in controversy exceeds $75,000.00. The Barrs contend that the complaint does not specifically state the amount in controversy. Further, the Barrs assert that the defendant has not met the damages threshold because it would not have to cease all activity at the well pad. The Barrs argue that EQT has several other alternatives that it could use to address the plaintiffs' concerns of noise, odor, and smoke (i.e. the defendant could construct sound walls/acoustic barriers). Thus, the plaintiffs assert that the defendant's full cessation argument is "gross speculation."

In response, EQT asserts that the Barrs have not limited their abatement request to "noise, odor, smoke, etc." but rather have made a much broader request for relief. Further, EQT argues that it is unclear if any of the methods suggested by the Barrs will fully address the underlying issues and may still require EQT to cease all activity. EQT also contends that Bowman's assertions are not speculative and that the Barrs have failed to provide evidence that contradicts his assertion that the costs of abatement would exceed $75,000.00.

In reply, the Barrs argue that they cannot seek partial or complete cessation of EQT's activities because of a supplemental release agreement entered into between the parties. The Barrs assert that this agreement released EQT from "any and all damages associated with and/or as the result of operation" of the well pads on the property. Thus, the Barrs contend that this agreement forecloses the Barrs from seeking full abatement by EQT. As such, the Barrs argue that EQT has provided irrelevant evidence and this case should be remanded as EQT has not provided evidence that alternative means of abatement would cost EQT more than $75,000.00.

This Court then directed EQT to file a surreply discussing the issue of the supplemental release agreement entered into by the Barrs. In its surreply, EQT asserts that the Barrs have conceded that they may only pursue litigation as to two of the four wells placed in the well pad at issue because of the supplemental release

3

agreement. Further, EQT argues that pursuant to the supplemental affidavit of Bryan Wayne Bowman, II filed with the surreply, EQT has shown that if operations at the two wells must cease the amount in controversy will exceed $75,000.00 (a cost in excess of $1,000,000.00).

Based on the following analysis, this Court finds that the plaintiffs' motion to remand must be denied.

### III. Applicable Law

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter. 28 U.S.C. § 1441. Federal courts have original jurisdiction over primarily two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331, and (2) those involving citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interest and costs pursuant to 28 U.S.C. § 1332(a). The party seeking removal bears the burden of establishing federal jurisdiction. See Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). Removal jurisdiction is strictly construed, and if federal jurisdiction is doubtful, the federal court must remand. Id.

Although courts strictly construe the statute granting removal jurisdiction, Doe v. Allied Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993), the court is not required "to leave common sense

behind" when determining the amount in controversy. Mullens v. Harry's Mobile Homes, 861 F. Supp. 22, 24 (S.D. W. Va. 1994). When the amount in controversy is not apparent on the face of the plaintiff's complaint, the federal court must attempt to ascertain the amount in controversy by considering the plaintiff's cause of action as alleged in the complaint and any amendments thereto, the notice of removal filed with a federal court, and other relevant materials in the record. 14C Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 3725 at 73 (3d ed. 1998).

## IV. Discussion

In this action, the main contention is whether or not EQT provided evidence to support its notice of removal. The Barrs' complaint states that there are several wells on the well site at issue in this litigation, the "Big 57 Wells" site. Further, the complaint avers that two of the wells at the "Big 57 Wells" site are subject to a "supplemental release agreement" which releases EQT from "any and all damages associated with and/or as the result of operations" of the two wells ("release wells"). ECF No. 1-1. The complaint then goes on to discuss two more wells which were placed on the site in October 2013 (the "October 2013 wells") which required the construction of a hard gravel berm. The complaint also alleges that the location, construction, and operation of the well pad site has caused unreasonable levels of noise, odor, and smoke. However, the complaint does not state that the Barrs are

not seeking damages only for the October 2013 wells or that they believe that the "supplemental release agreement" is binding or does not allow them to seek damages.

Additionally, the Barrs' allegations as to nuisance and negligence because of surface damages do not specifically state that they are only seeking damages for the October 2013 wells. Lastly, the Barrs request, in part, compensatory and punitive damages, the abatement of those activities adjudged to be a nuisance, and costs and attorney's fees.

A. <u>Supplemental Release Agreement</u>

The Barrs argue, in their reply to the motion to remand, that the "supplemental release agreement" forecloses them from seeking relief as to the release wells. Thus, the Barrs contend that EQT has not provided evidence in its notice of removal that the damages for those two wells would amount to $75,000.00 exclusive of interest and costs because it failed to specifically address the October 2013 wells by themselves.

However, this Court ordered a surreply because this Court did not believe that the Barrs had previously addressed their stance that they were foregoing any damages as to the release wells. As such, this Court afforded EQT an opportunity to address such a claim. EQT was then able to file a more narrowly tailored affidavit from Bowman, EQT's regional land manager.

This Court now finds that the affidavit may be considered as the Barrs addressed for the first time their stance that they were not seeking damages as to the release wells in their reply to the motion to remand. In equity, such consideration must be given. Thus, given the initial affidavit provided in the notice of removal and the subsequent affidavit addressing the October 2013 wells, this Court finds that if abatement is required, then EQT has met the $75,000.00 threshold. EQT has shown that abatement would require the cessation of production, value lost of mineral rights and acreage value, the costs of obtaining a new well pad permit or permits, and new construction. These costs are more than sufficient to meet the $75,000.00, exclusive of interest and costs, threshold.

B. <u>Abatement of the Nuisance</u>

The Barrs also contend, however, that full cessation of activity is not required. The Barrs assert that other alternatives could be used to abate the noise, smoke, and odor that they are complaining of. On the other hand, the Barrs also state in their complaint that the proximity of the wells and operations thereon are part of the issue. ECF No. 1-1, ¶ 9.

"Courts generally determine the amount in controversy by reference to the plaintiff's complaint." <u>JTH Tax, Inc. v. Frashier</u>, 624 F.3d 635, 638 (4th Cir. 2010) (citations omitted). "In actions seeking declaratory or injunctive relief, it is well

established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977). Further, courts "ascertain the value of an injunction for amount in controversy purposes by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant." Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002).

In this case, the cost to EQT has been shown to be more than $75,000.00, exclusive of interests and costs, if abatement of activity of the October 2013 wells is sought. An abatement is "[t]he act of eliminating or nullifying". Black's Law Dictionary 3 (9th ed. 2009). In this case, the Barrs are not only requesting in their complaint that EQT eliminate or nullify the noise, smoke, and odor, but are also complaining that the location and operation of the October 2013 wells has created a nuisance that must be abated. Accordingly, this Court finds that because abatement is requested in the complaint, and such abatement includes the complained of location and operation of the October 2013 wells, the amount in controversy may include the costs to EQT of abatement. As such, the amount in controversy requirement has been met.

## V. Conclusion

For the reasons stated above, this Court finds that the plaintiffs' motion to remand should be DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:   October 7, 2014

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE